60422. NORTHEASTERN INSURANCE AGENCY, INC. et al.
v. COURSON et al.

BIRDSONG, Judge.

Summary judgment. Northeastern Insurance Agency, Inc., and William D. McKinney appeal from an order of the trial court granting summary judgment in the amount of $15,000 in favor of Mrs. Courson contending it was error to grant summary judgment to Mrs. Courson. Mrs. Courson brought suit against Pennsylvania National Mutual Insurance Company, Northeastern and McKinney alleging that after McKinney had obtained a fire insurance policy on her rental property and a homeowner's policy on her residence at the request of her son who was acting as her agent, McKinney failed to maintain the fire policy. After the rental property was destroyed by fire on August 19, 1978, she attempted to file a claim with Pennsylvania National and

discovered that the three-year policy had expired on July 28, 1978, and that neither the insurance company nor McKinney's insurance agency had notified her that it was time to renew the insurance. The agency, however, did renew her homeowner's insurance. In ruling on the motions for summary judgment, the trial court granted summary judgment in favor of Pennsylvania National and dismissed it from the suit. *Held:*

1. The record clearly shows that Northeastern handled Mrs. Courson's insurance for six years prior to the fire. Northeastern obtained fire insurance and homeowner's insurance from American States Insurance Company from June 28, 1972, to July 28, 1975. This insurance was then placed with Pennsylvania National from July 28, 1975, to July 28, 1978. The homeowner's insurance was renewed on July 28, 1978. McKinney also obtained automobile insurance for her from Hartford and Kemper from 1972 to 1975. The agency's records show that Mrs. Courson had established credit with it and that McKinney made certain efforts on Mrs. Courson's behalf in filing a claim with Pennsylvania National after the fire. McKinney admits in his answers to interrogatories that he owns fifty percent of the stock of Northeastern, that he is the corporation's secretary-treasurer, and that he obtained the insurance at the request of Mrs. Courson's son, M. R. Dimsdale.

In support of her motion for summary judgment, appellee's affidavit states that the policies covering the rental property and her residence were obtained through McKinney, that she had established credit with the agency for the payment of insurance premiums and relied upon them to maintain fire insurance on her rental property. She never received any notice of Pennsylvania National's intent not to renew the fire insurance on her rental property. She says she was assured by McKinney that the failure to renew the insurance was caused by an oversight in his office. McKinney did not file a counter-affidavit in support of his motion.

At the hearing on the motions, appellant's counsel stated that "the insurance company had issued underwriting guidelines which indicated to the agent that the policy could not be renewed on this dwelling place. It was not eligible for coverage and he intentionally nonrenewed this policy based on the underwriting guidelines. . . ." When asked by the court if he notified the plaintiff when he sent her the invoice for the other policy that the company was refusing to renew the fire policy, counsel replied that he did not.

It seems clear that McKinney was an independent insurance agency which placed insurance with several insurers and was acting as appellee's insurance agent. An agent who negligently fails to procure insurance for his principal is liable to the principal for any

resulting loss. *Wright Body Works v. Columbus Interstate Ins. Agency,* 233 Ga. 268 (210 SE2d 801); *Johnson v. Pennington Ins. Agency,* 148 Ga. App. 147 (251 SE2d 116); *Beavers Ins. Agency v. Roland,* 135 Ga. App. 263 (217 SE2d 484). However, the facts of this case make this rule inapplicable.

In order for the doctrine of negligence to apply, there must have been a duty on the part of the agency toward the principal. See *Ford Motor Co. v. Carter,* 141 Ga. App. 371, 374 (233 SE2d 444). The facts show that Mrs. Courson entered into an agreement with Northeastern to procure insurance coverage by homeowner's insurance and fire insurance for the period 1975 to 1978. No evidence was presented that she had a continuing agreement with Northeastern to ensure continued coverage. The evidence also shows that the insurer, Pennsylvania National, had issued a homeowner's policy for the three-year period which contained a right of automatic renewal. That policy was renewed by Mrs. Courson through Northeastern upon its expiry. The fire insurance policy however did not contain an automatic right of renewal and Pennsylvania National declined to renew the policy on the premises insured. Though Mrs. Courson was the insured and was charged with the knowledge of the contents of her insurance policies *(Fields v. Goldstein,* 97 Ga. App. 286, 288 (3) (102 SE2d 921)), she did not pursue the fire insurance policy even though she was presented with no renewal policy when she received a renewal notice on her homeowner's policy. As an interested insured, she should have made inquiry either of Pennsylvania National or Northeastern as to why the fire policy was not renewed or required Northeastern to procure a new policy for the period commencing in July, 1978.

Mrs. Courson complained that there was a duty on Northeastern or Pennsylvania National to give her formal notice of the non-renewal of her fire policy. While that may be the current state of the law in this state (see Code Ann. § 56-2430.3), that law did not take effect until January 1, 1979, several months after the 1975 policy had expired in July, 1978. At the time of the non-renewal, there was no independent duty of notice of non-renewal. *Unigard Mut. Ins. Co. v. Fox,* 142 Ga. App. 706, 708 (236 SE2d 851).

There was no direct evidence presented of an actual or implied agreement between Courson and Northeastern for Northeastern to procure fire insurance on behalf of Courson in July, 1978. If there was evidence that could point to such an implied agreement, it was seriously disputed and created a question of fact for a jury. The other evidence upon which Mrs. Courson bases her claim of an existing agreement, such as the credit arrangement for payment of premiums, the actions of Northeastern in procuring auto insurance and

homeowner's coverage is in the same category, thus at best posing merely a question of fact as to an implied agreement to procure insurance coverage, a jury question. See *Parris & Son v. Campbell*, 128 Ga. App. 165, 168-169 (196 SE2d 334). It follows that the trial court erred by granting summary judgment to Mrs. Courson in view of the remaining substantial issues of fact.

2. Insofar as the grant of summary judgment to and dismissal of Pennsylvania National, a co-defendant does not have any standing to appeal an order granting summary judgment in favor of another defendant when its right has not been adversely affected thereby. *Robinson v. Franwylie*, 145 Ga. App. 507, 511 (244 SE2d 73). This enumeration is without merit.

*Judgment reversed. Quillian, P. J., McMurray, P. J., Smith, Shulman, Banke, and Sognier, JJ., concur. Carley, J., concurs in the judgment only. Deen, C. J., dissents.*

ARGUED SEPTEMBER 8, 1980 — DECIDED NOVEMBER 5, 1980 —

*John W. Wilcox, Edward L. Savell,* for appellants.
*Spencer W. Saunders, Sr., Alfred B. Adams, III,* for appellees.

DEEN, Chief Judge, dissenting.

I must respectfully dissent. The majority contends that there was no direct evidence of an actual or implied agreement between Courson and Northeastern to procure fire insurance on her behalf in 1978. The evidence, however, shows that Northeastern had handled her insurance needs for several years prior to the fire and the majority opinion holds that it was an independent insurance agency which was acting as appellee's insurance agent. On July 28, 1975, the agency obtained both a homeowner's policy on her personal residence and a fire insurance policy on her rental property with Pennsylvania National. Both policies were scheduled to expire on July 28, 1978. Northeastern notified her before the homeowner's policy expired and she renewed the policy, but apparently forgot to notify her that the fire insurance policy was about to expire. While the majority opinion claims that the fire insurance policy was nonrenewable, I do not believe that this point is material because Northeastern had a duty to notify her that the policy was about to expire in order to provide her the opportunity to obtain coverage with another insurer.

Courson's affidavit in support of her motion for summary judgment states that the policies covering both her residence and her rental property were obtained through McKinney, that she had established credit with the agency, and that she relied upon them to

maintain fire insurance on her rental property. She denied receiving notice of Pennsylvania National's intent not to renew the fire insurance policy and that she was assured by McKinney that the failure to renew the insurance was caused by an oversight in his office. *McKinney did not file a counter-affidavit.*

Under Code Ann. § 81A-156 (e) "When a motion for summary judgment is made . . . , an adverse party may not rest . . . [on] his pleading, but his response . . . *must* set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, *shall* be entered against him." (Emphasis supplied.) It is the duty of each party at the hearing on the motion for summary judgment to present his case in full.

As Northeastern was appellee's insurance agent and did not file a counter-affidavit denying Courson's claim that she was assured by McKinney that the failure to renew the insurance was caused by an oversight in his office, I believe that the trial court properly entered summary judgment in favor of the appellees.