A02A0672. WACHOVIA BANK, N.A. v. DECATUR AUTO CENTER, INC.

(566 SE2d 337)

MILLER, Judge.

As the result of a dispute over the proceeds in its corporate checking account, Decatur Auto Center, Inc. sued Wachovia Bank, N.A. for conversion. The trial court granted Decatur Auto's motion for summary judgment, awarding $30,500 in principal and $12,757.75 in attorney fees to Decatur Auto. In this appeal, Wachovia argues that the trial court erred in finding conversion. As conversion was not the proper cause of action to recover funds missing from a standard checking account, we reverse.

On June 3, 1999, Decatur Auto issued a check drawn on its corporate checking account in the amount of $30,500 made payable to Northside Sales & Leasing as payment for a car. Northside immediately deposited the check into its own checking account at Colonial Bank. When Colonial presented the check to Wachovia for collection, Wachovia refused to honor it because Decatur Auto's account lacked sufficient funds to cover the check.

On June 9, 1999, Colonial then sent a notice to Northside stating that the check had been dishonored by Wachovia and that Northside's account at Colonial had been debited in the amount of $30,503 that same day to make up for the dishonor plus a $3 fee. No evidence in the record reflects that Northside ever thereafter received any value from Colonial (whether as a credit to its account, advance, loan, funds, or otherwise) in exchange for the dishonored check.

According to Raimi Sanuse, the president of Decatur Auto, after the check bounced, he and David Womack of Northside negotiated a new agreement in which Decatur Auto agreed to pay Northside $30,500 in a combination of cash and checks in exchange for Northside's promise to return the check to Decatur Auto. Colonial nevertheless retained the check and continued to pursue collection. Colonial contacted Wachovia on a daily basis to determine if Decatur Auto's account had sufficient funds to cover the check. When two months later it learned that sufficient funds were present, Colonial

had its representative immediately drive over to Wachovia to cash the check. Colonial's representative happened to meet Decatur Auto's president at Wachovia. Upon learning of Colonial's intent, Decatur Auto's president told Colonial's representative that Decatur Auto had already paid Northside in cash and that the check belonged to Decatur Auto. Decatur Auto immediately put a "stop-payment" order on the check, and Colonial's representative left.

Aware of the stop-payment order, Colonial nevertheless requested that Wachovia pay the check and promised to indemnify Wachovia for any losses. Based on Colonial's promise, Wachovia two weeks later paid the check by issuing Colonial a new $30,500 "official check" drawn by Wachovia and by debiting Decatur Auto's account in that amount. Despite demands, Wachovia refused to pay Decatur Auto the $30,500 Wachovia had debited to cover the bank check to Colonial. Decatur Auto brought the present suit for conversion to recover the funds.

Although Decatur Auto may have various causes of action available to it, it chose to sue Wachovia only under the theory of conversion. Conversion, however, is not a proper avenue to recover funds missing from a standard checking account. Conversion (also known as trover) only lies to recover specific money entrusted to the defendant's care, not to recover money held generally by a bank in a checking account that is commingled with the bank's funds. See *Cooke v. Bryant*, 103 Ga. 727, 731-732 (30 SE 435) (1898). "Plaintiff is not seeking to recover some specific money, either in certain bills or coins to which it had title, but instead seeks to recover a certain amount of money generally." (Citations and punctuation omitted.) *Mgmt. Compensation Group &c. v. United Security Employee Programs*, 194 Ga. App. 99, 104 (4) (389 SE2d 525) (1989). Since Decatur Auto's claim could be discharged by the payment of any lawful currency of the United States, "this is not such a case for which a cause of action for conversion was intended." (Citations and punctuation omitted.) Id.

The particular relationship of banks to their checking account depositors confirms this conclusion in this case. "A deposit of money in a bank on general deposit creates the relation of debtor and creditor between the bank and the depositor." (Citation and punctuation omitted.) *Green Property Corp. v. O'Callaghan, Saunders &c.*, 177 Ga. App. 686, 687 (2) (340 SE2d 652) (1986). "The bank owes money to its depositor and becomes a debtor of the depositor. As a result, it is obligated to pay checks when drawn by its customer." (Citations omitted.) *West v. Fed. Deposit Ins. Corp.*, 149 Ga. App. 342, 345 (2) (a) (254 SE2d 392) (1979). Thus, the particular money credited to a depositor's general bank account (which is then commingled with other bank funds) does not "belong" to the depositor, but simply represents a debt or obligation owed by the bank to the depositor. A

breach of contract action or applicable tort action, but not a conversion action, would lie to recover damages caused by the bank's refusal to pay back the money. See, e.g., *Ralston v. Etowah Bank*, 207 Ga. App. 775, 777 (2) (429 SE2d 102) (1993). *Grant v. Newsome*, 201 Ga. App. 710 (1) (411 SE2d 796) (1991), cited by Decatur Auto, is distinguishable, as that case involved the unique relationship of an account held by a prison on behalf of a prisoner.

The trial court erred in granting Decatur Auto's motion for summary judgment.

*Judgment reversed. Blackburn, C. J., and Johnson, P. J., concur.*

DECIDED MAY 23, 2002 —
RECONSIDERATION DENIED JUNE 7, 2002 — 

*Gray & Gilliland, Charles A. Ratz*, for appellant.

*Weener, Mason & Nathan, William P. Mason, Brian J. Harris, Garland, Samuel & Loeb, Edward T. Garland, Spix & Krupp, Mark V. Spix*, for appellee.